MUNZ SPRALAWN CORP. *v.* WHITE CHAPEL MEMORIAL ASSN.

MUNZ *v.* PARK DEVELOPMENT CO.

PARK DEVELOPMENT CO. *v.* MUNZ SPRALAWN CORP.

1. APPEAL AND ERROR—WORK AND LABOR—REPAIRS.

Finding of court in action for work and labor in repairing an irrigation system that claim of defective installation was an afterthought and without merit *held,* justified by record.

2. Same—Contracts—Guaranty.

Finding of court that corporation was not a successor to individuals under contract guaranteeing irrigation system against defective material and workmanship for five years from completion in action brought by corporation for ·repairs made within five years of completion is sustained.

3. Same—Interest—Waiver—Evidence.

Finding of court that plaintiff had waived interest charge for unpaid balance due on contract for furnishing and installing irrigation and pumping system is not sustained where evidence shows that no written waiver had ever been made, that incident to use of contract as collateral to loan from trust company, consent of defendant was required and obtained and such claimed waiver is not referred to in assignment itself although defendant claims waiver of interest was consideration for its consent to assignment, that trust company did not understand interest had been waived, and defendant's president did authorize payment of interest; and evidence does not show any positive statement of waiver by plaintiff who itemized interest in statements of account rendered defendant.

4. Contracts—Payment—Irrigation System.

Claim of defendant for damages arising from defective installation of irrigation system is without merit where first, made in an amended bill of particulars filed long after final payment of contract price and defects, if as substantial as claimed, would have rendered such payment excessive by many thousands of dollars and there is decided dearth of testimony as to claim of substantial defects prior to bringing suit.

5. Equity—Jurisdiction—Action at Law—Garnishment.

That plaintiff seeks recovery of an unliquidated claim for damages and, therefore, could not garnishee in an action at law does not afford ground for equitable jurisdiction, especially where notice of recoupment in previously started action at law put in issue same claim alleged as basis for relief in equity.

Appeal from Wayne; Webster (Clyde I.), J. Submitted October 18, 1933. (Docket Nos. 39–41, Calendar Nos. 37,303–37,305.) Decided December 5, 1933. Rehearing denied January 30, 1934.

Assumpsit in common pleas court by Munz Spra-lawn Corporation, a Michigan corporation, against White Chapel Memorial Association, a Michigan cemetery association, for work and labor on irrigation system. Judgment for plaintiff. Defendant appealed to circuit court. Judgment for plaintiff. Defendant appeals. Affirmed.

Assumpsit by Charles W. Munz, doing business as Munn & Munz, against Park Development Company, a Michigan corporation, for interest due on contract for an irrigation and pumping system. Defendant filed notice of recoupment. From judgment for defendant for alleged insufficient amount, both parties appeal. Reversed, and judgment ordered entered for plaintiff.

Bill by Park Development Company and White Chapel Memorial Association against Munz Spra-lawn Corporation and others to enjoin actions at law, for money decree and other relief. Bill dismissed. Plaintiffs appeal. Affirmed.

Cases consolidated for trial as companion cases with separate judgments and decree.

*Ralph E. Routier,* for Munz Spralawn Corporation and others.

*Lucking, Van Auken & Sprague* (*Fred J. Schumann,* of counsel), for White Chapel Memorial Association and Park Development Company.

NORTH, J. By this record three cases instituted in Wayne county are presented for review. It was stipulated in the circuit court that the three might be heard as companion cases, and the testimony taken simultaneously before the circuit judge without a jury. Charles W. Munz, operating as Munn & Munz,

was a contractor who constructed underground irrigation systems, such as are used in parks, golf courses, burying grounds, etc. The Park Development Company was a Michigan corporation affiliated with and having in charge development activities of the White Chapel Memorial Association. The latter was a Michigan corporation which owned and was developing a cemetery known as the White Chapel Memorial Park. September 27, 1926, Munn & Munz contracted with the Park Development Company to furnish materials and install an irrigation system and a water supply system in White Chapel Memorial Park at a total cost of $98,500. As to payment the contracts provided:

"It is understood that as the various portions of the work are completed, the Park Development Company, Inc., is to assign to us sufficient cemetery lots to cover the amount of work done, the value of each lot to be figured at $150. The Park Development Company, Inc., agrees to redeem these lots at the same valuation, as soon as funds are available. In the event that any such lots are not redeemed six months after they have been assigned, or within six months after the completion of each portion of the work, the unpaid balance is to bear interest at six per cent. per annum, after the expiration of the said six-months' period."

No lots were ever assigned under the above provision. After completion of the work, and in 1929, further work was done for the White Chapel Memorial Association on the irrigation system by the Munz Spralawn Corporation. This work, amounting with interest to $482.16, was not paid for and to recover that amount the first of these three suits was instituted April 22, 1931, in the common pleas court of Detroit. There was an appeal to the circuit

court. Plaintiff had judgment in both courts. Defendant has perfected the instant appeal, which in substance is based on the assertion that the judgment was contrary to the testimony as presented to the trial court. Plaintiff's claim is thus stated:

"To repairing hydrant lines, repairing and replacing sprayheads, and raising lawn and garden heads at White Chapel Memorial Park as per invoices hereto attached . . . $430.50. With interest from 9/18/29 to date of payment at five per cent."

The defense urged was that plaintiff corporation was the successor to Munn & Munz (this being denied by plaintiff) and that the work was necessitated by defective installation of the irrigation system for the repairing and correction of which Munn & Munz were liable under the terms of their original contract. This contract guaranteed the irrigation system "against defective material and workmanship for a period of five years from date of completion," and also that it would cover the ground uniformly as indicated by the drawing.

As noted above this case was heard by the trial judge simultaneously with the suit started in the circuit court and to which we will shortly advert more in detail. From the testimony as a whole the circuit judge found, and we think justifiably so, that the claim of defective installation made by the defendant was an afterthought "which only came to the surface as a result of" an attempt on the part of the plaintiff to recover moneys claimed to be due from defendant corporations. Not only do we find from the record that the conclusion of the trial judge in the particular noted is justified, but we are also of the opinion that the Munz Spralawn Corporation was not a successor to Charles W. Munz, doing business as Munn & Munz, with whom the contract for

the irrigation system was made. The judgment entered in the circuit court is sustained by the record and is affirmed, with costs to appellee.

The second suit at law was commenced by summons in the Wayne county circuit court. By this suit Charles W. Munz, doing business as Munn & Munz, sought to recover from the Park Development Company an alleged unpaid balance on the contracts for the irrigation system and the water supply system. Payment had already been made in the exact amount of the contract price, $98,500, but plaintiff claimed accrued interest in excess of $4,500. Right of recovery was based by plaintiff on the portion of the contract hereinbefore quoted, namely: "the unpaid balance is to bear interest at six per cent. per annum, after the expiration of the said six-months' period." The defenses mainly urged are that this provision of the contract was subsequently waived by plaintiff and that the contract was paid in full. Defendant also gave notice of recoupment and set-off. The former was asserted incident to alleged defects in the installation of the irrigation system and the latter involved an item of advertising about which, as hereinafter noted, there is no controversy. The trial judge sustained defendant's contention as to waiver of the interest charge; but he disallowed defendant's claim of recoupment. Judgment was entered in favor of defendant for the item of advertising. Plaintiff, asserting error in the disallowance of its claim for interest, has appealed. The defendant also appealed from disallowance of its asserted recoupment.

The alleged waiver of interest is claimed by defendant to have been incident to a loan which Charles W. Munz and wife negotiated with the Guaranty Trust Company in 1927. In addition to other security for this loan Munz assigned to the trust com-

pany the unpaid contract price of plaintiff's contract with defendant. Defendant asserts that the trust company was unwilling to accept the assignment unless defendant consented thereto and that the latter refused to consent except plaintiff agreed to waive the contract provision for payment of interest. The testimony shows this matter was taken up between the trust company and the president of the defendant company, but there is only scant testimony as to Charles W. Munz having acquiesced in the arrangement. Defendant claims plaintiff's desire to secure the loan from the trust company caused Charles W. Munz to consent to the alleged waiver and securing the loan through defendant's consent to the assignment constituted consideration for the waiver. Plaintiff denies having waived the interest provision of the contract either orally or in writing. In fact there is neither testimony nor claim of a written waiver by plaintiff; and the only testimony tending to establish oral consent thereto was given by the witness Jones who at the time of the transaction was an officer of the Guaranty Trust Company but at the time of the trial was the secretary and treasurer of defendant company. Concerning his interview with Mr. Munz relative to waiving interest the witness Jones testified:

"*Q.* What did Mr. Munz say?
"*A.* Mr. Munz kicked about it. * * *
"*Q.* Did he agree to waive the interest at that time?
"*A.* He said there was no other way out of it.
"*The Court:* That does not answer the question.
"*Q.* Did he say whether or not he would waive the interest on that occasion?
"*A.* Yes.
"*Q.* What did he say? Do you recall the words?
"*A.* No, I don't recall the words."

The weakness of defendant's contention as to a waiver of interest is disclosed by the testimony of its president, from which we quote:

"*Q.* Upon what terms did you consent to the assignment?

"*A.* * * * I finally consented with the direct understanding that Mr. Jones have it distinctly understood that the entire interest on the contract be waived. That was the consideration of my accepting this assignment.

"*Q.* Now, who did you tell Mr. Jones was to agree to waive the interest before you would consent to the assignment?

"*A.* Well, we were talking of the Munz people. Mr. C. W. would naturally be the one.

"*The Court:* Did you talk to Mr. C. W. Munz yourself?

"*A.* No, I did not, your honor.

"*The Court:* He did not agree to this with you?

"*A.* No, he did not, no sir. * * *

"*Q.* Did Mr. Jones subsequently inform you that Mr. Munz had agreed to this? * * *

"*A.* * * * I don't recall positively if Mr. Jones told me afterwards whether Mr. Munz had agreed to it or not.

"*Q.* But your conversation with Jones was to the effect that unless he did agree to it, you would not consent to the assignment, is that correct?

"*A.* Correct.

"*The Court:* Did you sign a consent in writing?

"*A.* No, I did not. * * *

"*Q.* Was there ever any controversy after this assignment as to the question of waiver of interest?

"*A.* Never was, about any interest.

"*Q.* Did you ever have any meetings with either Mr. Charles W. Munz or with Elmer Munz in which the question of interest was discussed?

"*A.* Well, it was never discussed. It was just never going to be paid from the time the contract

was originally signed up to last talks I had with him.''

This witness admits that subsequent to the alleged waiver, at a time when he had something of a ''brain storm,'' he directed or authorized one of defendant's employees to pay the controverted interest charge. Defendant's witness Jones also testified to this same effect. Notwithstanding correspondence passed between these parties relative to this account, none was produced by defendant tending materially to sustain the claim of waiver now made. After the assignment of the contract, payments made thereon by defendant were direct to the trust company. The last payment, $30,000, was made September 24, 1929. It is conclusively shown by the record that before this payment was made and on September 21, 1929, plaintiff was insisting upon the payment of interest. This was long after the alleged waiver. On the date last mentioned plaintiff wrote defendant in part as follows:

''I have looked the whole matter over from every angle, and cannot by any stretch of my imagination understand why we are not entitled to the interest, both legally and morally. You have had the use of this money, during the period since it was due, at a very reasonable rate of interest, and we can see no reason why this should not be paid to us, as well as to anyone from whom you would have borrowed, had the account been paid when due.

''If you will refer to our statement, you will notice that the interest has never been figured, until six months after the billing, and we feel that we were extremely lenient, and perhaps lax in this respect. Perhaps you do not realize that the six-months' period, free from interest, cost us about $5,000. Even at six per cent. this would have amounted to $3,000. Taking these things into consideration, we

feel that we have been very liberal and cannot see our way clear to make any further concessions.''

As noted above, this letter was written to and received by defendant two years after the alleged waiver; but the record does not disclose disavowal of the above recitals on the ground that plaintiff had waived interest as is now claimed by defendant. And even before the date of the above letter, and on March 19, 1929, the trust company wrote a letter to the defendant which seems to indicate rather clearly that the trust company did not understand that payment of interest had been waived. We quote:

''I discussed the matter of the Munz letter of March 15, 1929, with the committee. They do not feel that they could accept the $27,000. They were of the opinion that if the amount due without interest was accepted that this settlement should be satisfactory to Mr. Munz.

''I would appreciate your taking this matter up with Mr. Munz so that we can come to some adjustment.''

In the assignment of this account to the trust company there was no reference whatever to there having been a waiver of payment of interest in consideration of defendant consenting to the assignment. In fact, as noted, no written consent was ever given by defendant, and consent to the assignment was not requisite as a matter of law. Defendant's claim that the $30,000 payment satisfied the account in full is not fully in accord with the indorsement typewritten on the check by which the payment was made, which indorsement reads: ''To apply on contract of Munz Spralawn Corp., and the Park Development Co., Inc.'' Just prior to this payment plaintiff had given defendant a statement of the account, September 21, 1929, on which statement its

claim of interest is plainly itemized. Over a year later (December 5, 1930) defendant's president wrote plaintiff a letter relating to this account. Concerning this communication the following appears in his testimony:

"*Q.* From this letter, exhibit 49, Mr. Sanger, evidently there was still some inclination on your part to pay the balance due on the Munn & Munz contract, is that correct? *   *   *

"*A.* Yes."

It is difficult to harmonize this testimony with defendant's present claim that it is entitled to recover thousands of dollars by way of damages for defective installation, or with its other claims that payment of interest was waived in 1927, or that the payment of the $30,000 in September, 1929, was in full satisfaction of the contract.

In its brief defendant states "the most important breach of contract is appellant's failure to install a system that would give adequate coverage." For this item defendant sets forth in its amended bill of particulars a claim for recovery in the amount of $15,000. Approximately 80 per cent. of the work of installation of the irrigation system was completed in 1927, the balance in 1928. It is quite beyond comprehension that the system should be as remarkably defective in covering the area to be irrigated as defendant now claims, and such defect not be discovered for two or three years thereafter. If defendant's claim is sound, at the time it made the $30,000 payment (September 24, 1929) it was deliberately paying over thousands of dollars more than plaintiff was entitled to receive. In passing it may be noted that defendant's first bill of particulars, filed June 11, 1931, covering its alleged recoupment for items of this type amounted to less than

$500. It was not until later (April 19, 1932) that the amended bill of particulars of the recoupment was filed in the amount of $19,600. In the briefs submitted on this appeal the amount claimed is $12,410.21. Notwithstanding defendant's claim of damages in these large amounts, there is a decided dearth of testimony tending to show that at any time before suit was brought (April 22, 1931) defendant ever made the claim that it had sustained any such extensive damage by reason of defective installation, or that there had been an express waiver of interest in 1927, or that the account had been fully satisfied by the payment of $30,000 in September, 1929. In view of these and many other facts appearing in the record, it is not surprising that the circuit judge recited in his opinion:

"I certainly would not be prepared to hold from this testimony, conflicting as it has been, that any trouble that the defendant is now complaining of was caused by improper installation or by improper coverage."

We forego reference to further details of the record. It fully satisfies us of plaintiff's right to recover notwithstanding the defenses urged. In arriving at this conclusion we have not overlooked statements of account rendered by plaintiff and letters written in his behalf which seem to ignore the item of interest of which plaintiff now seeks recovery. As to this item the holding of the trial court will be reversed and judgment rendered for plaintiff. The amount recoverable is $4,215.33, with simple interest thereon at the rate of six per cent. per annum computed from September 24, 1929, to date of entering judgment. From the amount so determined there should be deducted defendant's set-off for the advertising charge in the amount of $377.40

with legal interest thereon from April 21, 1932, to the date of entering judgment. As indicated, we are in accord with the holding of the trial judge that defendant's claim for damages arising from defective installation of the irrigation system is without merit. We have already sufficiently reviewed the facts in the record justifying this determination. In this law case the record will be remanded to the circuit court of Wayne county for entry of judgment in accordance herewith. Appellant will have costs.

While the two suits at law were pending the remaining suit before us on this appeal was instituted on the equity side of the circuit court of Wayne county by the Park Development Company and the White Chapel Memorial Association. Plaintiffs in the suits at law hereinbefore considered were made parties defendant in the equity case. The bill of complaint presents no issue which could not have been and which should not have been adjudicated in one or the other of the suits at law. For this reason the trial judge decreed dismissal of plaintiffs' bill of complaint. We think the decree was clearly correct. This is true notwithstanding appellants' contention that because they sought to recover an unliquidated claim for damages, they could not garnishee in a suit at law. This circumstance does not give equity jurisdiction incident to suits for the recovery of unliquidated claims. The jurisdiction is still on the law side of the court. Further, by their notice of recoupment in the law case commenced in the circuit court, defendants put in issue the same claim of a right to recover for defective installation as is alleged as a basis of relief sought in the chancery suit. Clearly it could not be adjudicated in both cases. In any event in view of our holding herein plaintiffs could not have recovered in the

chancery case on the merits of the issues there presented. Plaintiffs' appeal from the decree dismissing their bill of complaint is without merit.

The decree entered in the circuit court is affirmed, with costs to appellees and costs of this court may be taxed against the sureties on the appeal bond.

McDonald, C. J., and Weadock, Potter, Sharpe, Fead, Wiest, and Butzel, JJ., concurred.